**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CLEMMONS' ESTATE** * | |
| **c/o SAMUEL CLEMONS** * | |
| **2137 Soft Pine Lane** * | |
| **Acworth, Georgia 30132,** * | |
| * | |
| **Plaintiff,** * | |
| * | **Civil Action No. 1:06-CV-01657 (RCL)** |
| * | |
| **STATE OF GEORGIA, et al.,** * | |
| * | |
| **Defendants.** * | |

<u>**STATE OF GEORGIA OFFICE OF THE GOVERNOR AND OFFICE OF THE**
**ATTORNEY GENERAL'S PRE-ANSWER MOTION TO DISMISS OR, IN THE**
**ALTERNATIVE, TO TRANSFER BY SPECIAL APPEARANCE**</u>

COMES NOW the Defendants State of Georgia, Office of the Governor, and Office of the Attorney General (hereinafter "State Defendants"), by special appearance without waiving service of process or submitting themselves to the jurisdiction of the Court, by and through the Attorney General of the State of Georgia, and respectfully submit this their Pre-Answer Motion to Dismiss or, in the alternative, Transfer.  Plaintiff fails to state a claim against the State Defendants upon which relief may be granted under 42 U.S.C. § 1983, the State Defendants are entitled to sovereign immunity, the Court lacks personal jurisdiction over the State Defendants and lacks subject-matter jurisdiction over Plaintiff's claims, Plaintiff's claims are barred by the doctrine of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and the applicable statute of limitations, Plaintiff fails to state a cause of action under 18 U.S.C. § 1001 *et seq.*, and this action should be dismissed based on the doctrine of <u>forum non conveniens</u>.  Alternatively, the State Defendants respectfully request this Court to transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1404(a) and the doctrine of <u>forum non conveniens</u>.

In further support of their Motion, the State Defendants respectfully submit their

Statement of Points and Authorities in Support of their Motion, filed contemporaneously

herewith.

Respectfully submitted this 8th day of February, 2007.


THURBERT E. BAKER          033887
Attorney General

KATHLEEN M. PACIOUS        558555
Deputy Attorney General

/s/ Devon Orland_____
DEVON ORLAND               554301
Senior Assistant Attorney General


/s/ Holly Michele Loy_____
HOLLY MICHELE LOY
Georgia Bar No. 036299
Assistant Attorney General

HOLLY MICHELE LOY
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone:  (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: hloy@law.ga.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8th, 2007, I electronically filed a

**DEFENDANTS' PRE-ANSWER MOTION TO DISMISS** with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such filing

to all attorneys of record.

I further certify that I have on this same date mailed by United States Postal

Service the document to the following non-CM/ECF participants:

        Clemmons' Estate
        c/o Samuel Clemmons
        2137 Soft Pine Lane
        Acworth, Georgia 30132

This 8th day of February, 2007.

        /s/ Holly Michele Loy_____
        HOLLY MICHELE LOY
        Georgia Bar No. 036299
        Assistant Attorney General

HOLLY MICHELE LOY
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone:  (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: hloy@law.ga.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CLEMMONS' ESTATE          *
c/o SAMUEL CLEMONS        *
2137 Soft Pine Lane       *
Acworth, Georgia 30132,   *
                          *
    Plaintiff,            *
                          *        **Civil Action No. 1:06-CV-01657 (RCL)**
                          *
STATE OF GEORGIA, et al., *
                          *
    Defendants.           *

## STATE OF GEORGIA OFFICE OF THE GOVERNOR AND OFFICE OF THE ATTORNEY GENERAL'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPPORT OF ITS PRE-ANSWER MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER BY SPECIAL APPEARANCE

COMES NOW the Defendants State of Georgia, Office of the Governor, and Office of the Attorney General (hereinafter "State Defendants"), by special appearance without waiving service of process or submitting themselves to the jurisdiction of the Court, by and through the Attorney General of the State of Georgia, and respectfully submit this Brief in Support of their Motion to Dismiss or, in the alternative, Transfer.  In further support of their Motion, State Defendants show the Court as follows:

### I.    PROCEDURAL BACKGROUND

Plaintiff filed this action on September 26, 2006, against the Atlanta Police Department, Fulton County Sheriff's Department, DeKalb County Sheriff's Department, Office of the Solicitor General Attorney Rupal Vaishnav, State of Georgia, Office of the Governor, Office of the Attorney General, and Venice R. Daley.  On October 2, 2006, Plaintiff apparently filed an amended Complaint consisting of a single page which omits the Office of the Attorney General as a Defendant.

On January 12, 2007, a copy of a summons and the September 26, 2006 Complaint were received by the Georgia State Board of Pardons and Paroles.  The Summons is directed to the "Office of the Governor, Georgia State Capitol, Attn: Office of Pardons, Atlanta, Georgia, 30334."   No other attempts at service appear to have been made on the State or any agency, department or official of the State.[1]

## II.     FACTUAL BACKGROUND

Plaintiff's Complaint is a rambling, non-specific, and at times incoherent narrative which purports to allege causes of action against the City of Atlanta Police Department, Fulton County (Georgia) Sheriff's Department, DeKalb County (Georgia) Sherriff's Department, the Office of the Solicitor General, Attorney Venice R. Daley, and the State of Georgia.  Plaintiff Samuel Clemmons (suing as "Clemmons' Estate") appears to be a resident of Acworth, Cobb County, Georgia.  All of the events giving rise to Plaintiff's claims allegedly took place in the State of Georgia (Plaintiff's Complaint at Page 6).  All of the State Defendants named in this action are governmental entities and residents of Georgia.

On March 22, 2002, Plaintiff was arrested by officers of the Fulton County Sheriff's Department (Complaint at Page 6).  The officers allegedly used excessive force against the Plaintiff and did not inform Plaintiff of the reason for his arrest. (*Id.*)   Plaintiff was taken into custody in Fulton County Jail, where a Fulton County Sheriff's Deputy named "Sgt. Ruffin" allegedly "[stole] the Plaintiff's identity through fingerprints." (Complaint at Page 7).  Plaintiff claims he was not informed of his *Miranda* rights or the charges against him and "was assigned a booking number for the record of being **020885** without a police report attached."  (*Id.*) (Emphasis in original).

---

[1]     True and correct copies of Plaintiff's Complaint, Plaintiff's Amended Complaint and summons addressed to the Office of the Governor  are part of the record of this case, filed with the Clerk for the United States District Court for the District of Columbia.

Also on March 22, 2002, Plaintiff alleges he was transported, in handcuffs and shackles, from Fulton County to DeKalb County (apparently to the DeKalb County Jail).  (*Id.*)  Sometime during this transport, he "expressed and pleaded the 5th Amendment" and allegedly asked for and was denied the right to speak with an attorney.  (*Id.*)  He was fingerprinted again by officers at the DeKalb County Jail who, by doing so, "stole the Plaintiff's identity." (*Id.*)  Plaintiff's fingerprints were allegedly checked against the records of the Georgia Bureau of Investigation, "which showed no pervious [sic] or priors arrested."  (*Id.*)   Plaintiff alleges the DeKalb County Sheriff's Department "falsely reported [Plaintiff's identity] to the Federal Bureau of Investigation and the Georgia Bureau of investigation," thereby violating 18 U.S.C. § 1001 and Plaintiff's constitutional rights, although he does not disclose the falsehood allegedly reported. (*Id.*)

Plaintiff states he was arraigned on June 3, 2002.  (Plaintiff's Complaint at 8).   Plaintiff allegedly pleaded not guilty and a trial date was set for July 25, 2003.  (Plaintiff's Complaint at pages 8-9).  For reasons that are not disclosed in the Complaint, Plaintiff's trial did not take place on July 25, 2003.  Instead, "[o]n this date the court refused to hold such trial or give the Plaintiff an honest and truthful trial according to Plaintiff's constitutional rights….under due process of law."  (Plaintiff's Complaint at Page 9).  In fact, according to his Complaint, Plaintiff **still has yet to be trial for the charges for which he was arrested in 2002**; "As of the date this Complaint is filed in this court the Plaintiff….is still out on bond and *still has not been tried for the crime or crimes the Plaintiff has been accused.*"  (Plaintiff's Complaint at page 8 (emphasis added)).

Sometime on or before March 3, 2003, Plaintiff had been ordered to report for a "non-consent[ual] blood test."  (Plaintiff's Complaint at Page 12).   Plaintiff states he appeared for this

blood test but the "State of Georgia" altered documents to make it appear as though Plaintiff had not. (*Id.*)  As a result of these machinations by the State of Georgia, on March 2, 2003, Plaintiff was "set up" for "fraudulent claims or actions of contempt of court by the State of Georgia." (*Id.*)  Plaintiff states he was held for 28 to 30 days but does not state which part of that period represents time served for the "fraudulent" contempt of court charge. (Plaintiff's Complaint at Page 12; see specifically Page 12 at lines 12-13 and 22-23).  Plaintiff likewise does not state whether the contempt of court charge was terminated in his favor or, if not, whether he appealed his conviction.[2]

From the allegations in Plaintiff's Complaint, it appears that the trial original set to take place on July 25, 2003 was reset, although Plaintiff does not disclose the new trial date.  In any event, Plaintiff apparently failed to appear on the new trial date.  (See Plaintiff's Complaint at page 10, stating a warrant had been issued against him for failure to appear).  A arrest warrant for failure to appear was "fraudulently" issued by "Judge Edward Carrier" (presumably Judge Edward E. Carriere, Jr., of the State Court of DeKalb County, Georgia).  (Plaintiff's Complaint at page 22).[3]  On June 5, 2006, Plaintiff was taken into custody and placed under arrest at Hartsfield-Jackson International Airport in Atlanta, Georgia, pursuant to the warrant for failure to appear.  (Plaintiff's Complaint at Pages 9-10, 11).  It is unclear who actually arrested the Plaintiff:  at page 10 of his Complaint, Plaintiff states that he was arrested "by a Federal Government Agency claiming another false charges of Abandonment" but neglects to identify that federal government agency.  (Plaintiff's Complaint at Page 10).  At page 11, however, Plaintiff alleges he was arrested by officers from the City of Atlanta Police Department.

---

[2]     Plaintiff does not include this incident in his summary of claims appearing at pages 13 – 15 of his Complaint, but for purposes of its Motion to Dismiss, the State of Georgia will presume Plaintiff intends to state this incident as a separate basis for relief.

[3]     Judge Carriere is not a named defendant or party to this lawsuit.

(Plaintiff's Complaint at Page 11).  The City of Atlanta officers were allegedly responsible not only for this false arrest but also for the theft or conversion of "mysterious missing of items and funds…from the Plaintiff's personal carry-on bags" in his possession at the time of his arrest. (*Id.*).

On or about this same date, Plaintiff was taken to the DeKalb County Jail, where he was allegedly held for fourteen (14) days "without going before a judge to enter a plea for the charge or charges Plaintiff was arrested for."  (*Id.*)  While in custody, Plaintiff was told by a DeKalb County correction officer that he was being held for so long because the charges against him were being upgraded from a misdemeanor to a felony.  (Plaintiff's Complaint at Pages 11-12). The DeKalb County officer allegedly made this "false" statement to Plaintiff within the presence and hearing of other inmates at the DeKalb County Jail, amounting to an "abuse of authority by the State of Georgia" and a violation of 18 U.S.C. § 1001. (*Id.*)

Plaintiff attempts to summarize the wrongs done to him at pages 13-14 of his Complaint:

1.      The Plaintiff once was the Defendant in a wrongfully State court action was herein charge with a wrongfully crime or offense of Abandonment which resulted in a fraudulent charged [sic].

2.      The Plaintiff was once the Defendant show that on or about March 22, 2003, he was illegally arrested and charged with the above-stated offense in violation of O.C.G.A. § 17-4-20 in that no crime was committed in the presence of any arresting officers.  The arresting officers did not have an arrest warrant or search warrant; nor did the arresting officer produce such warrant at the time of the arrest; and that this Plaintiff once the Defendant was not endeavoring to escape…. [Plaintiff specifically alleges these actions against Fulton County Sheriff's Department Officers Wilcox and Officer (or Sergeant) Ruffin; DeKalb County Sheriff's Department Officers Moore, Jones and Robbins, and DeKalb County Sheriff Thomas Brown].

3.      That prior to said illegal arrest, the Police searched this Plaintiff once was the Defendant and retrieved no money without any identification to confirm who the arresting officer was arresting and without a search warrant to deprive beyond any scope to verify identity [sic].

4.    This Plaintiff once was the Defendant anticipates that said illegally seized blood and fingerprints will be offered against him at his trial on said charge.

5.    The Plaintiff once was the Defendant shows that the aforesaid illegal search and seizure was conducted unlawfully and in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and of the State of Georgia, Article I, Section I, Paragraph XIII of the Constitution of the State of Georgia of 1983, in that said acts on the part of the arresting police officers constituted an unreasonable search and seizure in violation of said provisions.

6.    The Plaintiff once was the Defendant specifically shows that such said illegal search and seizure was conducted prior to his being arrested and after being arrested and charged with any criminal acts.

7.    The Plaintiff once was the Defendant further states that he is an aggrieved person by virtue of this unlawful search and seizure, and by virtue of the charge pending against him which arose out of the aforementioned unlawful search and seizure against his will and without his consent, all in violation of his rights under the laws of the State of Georgia, O.C.G.A. § 17-5-1 et seq., and in further violation of the Fourth and Fourteen Amendments of the United States of America Constitution.

(Plaintiff's Complaint at Page 14-15).

As a remedy for these violations, Plaintiff requests relief including but not limited to Sixty Million Dollars ($60,000,000.00) in damages "after taxes for full recovery" (Plaintiff's Complaint at Page 24), suppression of all evidence resulting from the allegedly illegal searches (Complaint at Page 15), a pardon for the crimes for which he was arrested (Plaintiff's Complaint at Page 27-29), and expungement of the records of the law enforcement agencies and the state of Georgia to remove any reference to Plaintiff, specifically including the criminal charges against him (Plaintiff's Complaint at Page 16).[4]

---

[4]    Plaintiff also requests other forms of relief, including an Order by this Court "ordering the "government to make an amendment" to the laws of abandonment to reflect that women intentionally and maliciously "set up" men for monetary gain and precluding charges for abandonment in cases where the parents are not currently or have never been married (Plaintiff's Complaint at Page 25) and an Order directing the State of Georgia to conduct its "legal business according to the United States of America's Constitution" (Plaintiff's Complaint at Page 24).

## III.    ARGUMENT AND CITATIONS OF AUTHORITY

### A.    STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of a plaintiff.  Taylor v. FDIC, 132 F.3d 753, 761 (D.C. Cir. 1997).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d. 80 (1957).  The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.  Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006).  "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Walker v. Seldman, 2007 U.S. Dist. LEXIS 3540, *11-*12 (D.D.C.) (citing Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  If the allegations of the complaint, even if proven, would not provide the Plaintiff a basis for recovery, the movant is entitled to judgment.  Haynesworth v. Miller, 820 F.2d 1245, 1254 (Ct. App. D.C. 1987).

### B.    STATE DEFENDANTS' MOTION TO DISMISS

#### 1.    The State Defendants Are Not "Persons" Within the Meaning of 42 U.S.C. § 1983.

Plaintiff seeks to recover for alleged violations of his constitutional rights.  The vehicle to seek recovery for a violation of federal rights is 42 U.S.C. § 1983.  See Gonzaga University v. Doe, 536 U.S. 273, 283 (2002).  The statutory language of 42 U.S.C. § 1983 provides that certain actions by a "person" or "persons" which violate the rights of others may be actionable.  The United States Supreme Court has ruled that the term "person" in this context is to be given its

ordinary meaning, and that, more specifically, "a State, or governmental entity [such as the State of Georgia] are not persons within the meaning of § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989). The U.S. Supreme Court has further determined that the term "State" includes State agencies, local governmental agencies, and individual state officers sued in their official capacities. Id. at 70, 71; Mt. Healthy Bd. of Educ v. Doyle, 429 U.S. 276 (1977); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990); Fincher v. State of Florida Dep't of Labor and Employment Security – Unemployment Appeals Commission, 798 F.2d 1371 (11th Cir. 1986).

Since Plaintiff's claims are against the State of Georgia, the Office of the Governor, and the Office of the Attorney General, and neither the State of Georgia, the Office of the Governor nor the Office of the Attorney General are "persons" within the meaning of 42 U.S.C. § 1983, Plaintiff has failed to state a valid claim against the State Defendants upon which relief may be granted.

### 2.    The Claims Brought Against the State Defendants are Barred by the Eleventh Amendment to the United States Constitution.

It has long been established that the Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from State funds. Kentucky v. Graham, 473 U.S. 159, 169 (1985). See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100-01 (1984) (Pennhurst II); Silver v. Baggiano, 804 F.2d 1211, 1213-14 (11th Cir. 1986). The U.S. Supreme Court has construed the Eleventh Amendment jurisdictional bar to extend to federal suits against a non-consenting State "by her own citizens as well as citizens of another state" Port Auth. Trans-Hudson v. Feeney, 495 U.S. 299, 304 (1990) (quoting Pennhurst III, supra, 465 U.S. at 100).

The Eleventh Amendment is an absolute bar to damage actions against the State, its entities, and its officers in their official capacities in federal court under 42 U.S.C. § 1983.  *See* Will, *supra*, 491 U.S. at 65; Gamble v. Florida Dep't of Health and Rehabilitation Svcs., 779 F.2d 1509, 1511-20 (11th Cir. 1986); Fouche v. Jekyll Island State Park Auth., 713 F.2d 1518, 1520-22 (11th Cir. 1983).  *See also* Hobbs v. Georgia Dep't of Transportation, 785 F. Supp. 980 (N.D. Ga. 1991).  The State of Georgia's Constitution and the Georgia Tort Claims Act clearly preserve the State's immunity from suit on federal claims. *See* O.C.G.A. § 51-21-23(b) and Ga. Const. Art. I, § II, Para. IX(f).  The claims against the State Defendants must be dismissed.

### 3.  The Rooker–Feldman Doctrine Divests the Court of Subject Matter Jurisdiction Over Plaintiff's Claims.

The Rooker-Feldman doctrine presents a jurisdictional bar to Plaintiff's apparent claims, since (per the Complaint) he apparently was convicted of criminal offenses in state court (or, at the very least, has been indicted and is awaiting trial) and is effectively asking this Court to entertain an appeal of one or more state court judgments.[5]  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923).

> The Rooker-Feldman doctrine generally prohibits lower federal courts from reviewing state court decisions; "rather, jurisdiction to review such decisions lies exclusively with the superior state courts and, ultimately, the United States Supreme Court." Plyler, 129 F.3d at 731.  Under the Rooker-Feldman, doctrine, lower federal courts may not consider either "issues actually presented to and decided by a state court" or "constitutional claims that are inextricably intertwined with questions ruled upon by a state court." Id. (internal quotation marks omitted).  Federal courts are divested of jurisdiction "where entertaining the federal claim should be the equivalent of an appellate review of the state court order." Jordahl, 122 F.3d at 202 (alterations and internal quotation marks omitted).  Rooker-Feldman applies when the federal action "essentially amounts to nothing more than an attempt  seek review of [the state court's] decision by a lower federal court." Plyler, 129 F.3d at 733.  Thus, "when a party sues in federal court to readjudicate the same issues decided in the state court proceedings, that action is in

---

[5]    It should be noted that if Plaintiff is awaiting trial the adjudication of this claim should be delayed, at a minimum.  See Younger v. Harris, 401 U.S. 37 (1971).

> essence and attempt to obtain direct review of the state court decision…in contravention of <u>Rooker-Feldman</u>." <u>Brown & Root</u>, 211 F.2d at 201. The label attached to the federal court action will rarely, if ever, be important, since a party that is seeking in federal court to readjudicate an issues decided in state court is unlikely to do so.

<u>Friedmans, Inc. v. Dunlap</u>, 290 F.3d 191, 196 (4th Cir. 2002). Where applicable, the doctrine

divests United States District Courts of subject matter jurisdiction. <u>Id.</u> at 195-96.

Here the alleged acts or omissions by the State Defendants are all related Plaintiff's arrest

or the investigations into criminal charges against the Plaintiff in Georgia. Since it appears that

nearly all of Plaintiff's claims hinge on attacking and/or overturning the validity of the Georgia

state court judgments and proceedings, the United States District Court for the District of

Columbia lacks subject matter jurisdiction to entertain this action. At a minimum, the <u>Rooker-

Feldman</u> doctrine bars all claims having to do with supposedly defective state court proceedings.

### 4.    Plaintiff's Claims Are Barred By the Doctrine of <u>Heck v. Humphrey</u>.

According to <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-487 (1994), a 42 U.S.C. § 1983

damages action which would tend to demonstrate the invalidity of a conviction or sentence can

not be brought until the underlying conviction or sentence has terminated in plaintiff's favor.

<u>See</u> <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995). Further, the Court states that a claim

for damages for a conviction or sentence that has not terminated in the plaintiff's favor is not

cognizable under § 1983. <u>Heck</u>, 512 U.S. at 487.

The Supreme Court gave an example of the type of case that should not proceed:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted . . . the § 1983 action will not lie.

<u>Heck</u>, 512 U.S. at 487 n. 6.

The Court in <u>Heck</u> recognized that it was inconsistent and contravened strong judicial policy if a litigant were allowed to succeed in a tort type action after having been convicted in the underlying criminal action.  <u>Heck</u>, 512 U.S. at 484. Allowing such a contradiction would also raise concerns for finality and consistency, as well as opening the door for civil tort actions to be used as a vehicle for challenging the validity of criminal convictions.

Plaintiff's Complaint purports to state constitutional causes of action for false arrest, illegal searches and seizures, violations of his right to counsel, false imprisonment, and violations of his right to speedy trial.  Each of Plaintiff's claims arises from his arrest and detainment related to criminal charges for which, as of the date of the Complaint, Plaintiff has either been convicted or is awaiting trial.  (Plaintiff's Complaint at Page 8).  As part of his specific prayers for relief, Plaintiff asks this Court to suppress evidence against him in the criminal trial of these charges (further indicating Plaintiff has yet to be tried on these charges), a "pardon" for these crimes, and expungement of his records to remove any reference to these crimes or charges.  (Plaintiff's Complaint at Pages 15, 27-29, and 16).  However, until and unless the criminal charges and/or convictions underlying Plaintiff's Complaint are terminated in his favor, he cannot bring any these claims.  Plaintiff's claims are untimely, barred by the doctrine set forth in <u>Heck v. Humphrey</u>, and Defendant respectfully requests this Court dismiss Plaintiff's Complaint.

### 5.      Plaintiff's Claims are Barred by the Statute of Limitations

Because Congress provided no specific statute of limitation to govern actions brought pursuant to 42 U.S.C. § 1983, the United States Supreme Court has endorsed the policy of borrowing the state limitation period governing analogous actions under state law.  In applying this policy, the Supreme Court has concluded that "based upon the legislative history of § 1983 and the wide array of claim now embraced by that provision, that § 1983 confers a general remedy for injuries to personal rights….[Since such claims] are best characterized as personal injury actions…a State's personal injury statute of limitations should be applied to all § 1983 claims." Thus, whether the 42 U.S.C. § 1983

action is based on a personal injury claim, a claim of conversion, or any other type of claim, the applicable limitation period is the two year period for personal injury set out in O.C.G.A. § 9-3-33.

Day v. Brown, 207 Ga. App. 134, 134-35, 427 S.E.2d 104 (1993) (citations omitted).

Plaintiff filed his Complaint on September 26, 2006. With greatest deference to the Plaintiff, any claims arising from events taking place prior to September 26, 2004, are barred by the applicable two year statute of limitations.[6] Plaintiff's claims arising from his arrests, detainment and arraignment in 2002, his arrest and detainment and/or conviction for contempt in March 2003, and his alleged denial of a trial in July 2003 are stale and must be dismissed.

## 6. Plaintiff Cannot State a Cause of Action Under 18 U.S.C. § 1001 *et seq.*

In order for Plaintiff to seek redress under 42 U.S.C. § 1983 he must first demonstrate that he has a federally enforceable right under the statute relied upon. 18 U.S.C. § 1001 *et seq.* creates no such right. The U.S. Supreme Court has long said that, "[i]n order to seek redress through § 1983, [] a plaintiff must assert a violation of a federal *right*, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (the Supreme Court found no basis for a suit brought by Arizona mothers under Title IV-D of the Social Security Act, which requires states receiving federal child-welfare funds to substantially comply with requirements designed to ensure timely payment of child support. The Supreme Court reasoned that because the provision focused on "the aggregate services provided by the State," rather than "the needs of any particular person," it conferred n individual rights and thus could not be enforced by § 1983.). In Blessing, the Court identified three factors that must be looked at in determining whether a statute gives rise to a federal right:

---

[6]    State Defendants note that if the action terminates in Plaintiff's favor, some claims may not start to run until the favorable adjudication.

First, Congress must have intended that the provision in question benefit the plaintiff. [Cit.]  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. [Cit.]  Third, the statute must unambiguously impose a binding obligation on the States.

520 U.S. at 340-41.

The issue was further clarified in <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002), where the Supreme Court made it clear that  spending legislation  which puts enforcement clearly in the hands of federal authorities and does not clearly and unambiguously create a right of enforcement for individuals cannot be used by individuals in a § 1983 action a means to enforce the law.  Following <u>Blessing</u>, according to the High Court itself, courts allowed plaintiffs to enforce statutes under § 1983 "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect." <u>Gonzaga Univ.</u>, 536 U.S. at 283.

In <u>Gonzaga University</u>, the Court noted,

We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.  Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

<u>Id.</u>  The Court went on to say, "we further reject the notion that our implied right of action cases are separate and distinct from our §1983 cases.  To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983." <u>Id.</u> Emphasizing this point, the Court stated, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for private suit, whether under § 1983 or under an implied right of action." <u>Id.</u> at 286.  The Court then added that "the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." <u>Id.</u> at 341.

In <u>Gonzaga University</u>, a graduate student seeking an elementary school teaching job sued the university he had attended after a university representative contacted the state agency which certified teachers and told them about sexual misconduct allegations that had been made against Doe. Doe sued the university under a federal law which banned the policy or practice of permitting the release of education records or personal information of students without their written consent. The law, Family Educational Rights and Privacy Act (FERPA), said federal funding would be denied to educational institutions which violated the law. The case went to the U.S. Supreme Court which held Doe could not sue the university because Congress did not create a personal right of action for him under FERPA.

Thus, after <u>Gonzaga University</u>, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 of under an implied right of action. <u>Id.</u> at 286. Further, where a statutory provision contains "no rights-creating language," has an "aggregate, not individual, focus," and serves primarily to direct the distribution of funds, it does not create an enforceable right under § 1983. <u>Id.</u> at 290.

In the case before the bar, it is clear that 18 U.S.C. § 1001 *et seq.* contains no reference to an individual right nor any rights-creating language. Section 1001 is a criminal statute, providing only criminal penalties against those giving false statements in relation to investigations or other crimes as defined by the statute. Specifically, 18 U.S.C. § 1001 provides that provides that

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall

14

be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to—(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or (2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

In this case, the statute is utterly void of any expression of Congressional intention that an individual right is conferred or intended by the language of 18 U.S.C. § 1001.  The statute's only intended beneficiary is the federal government; that is, 18 U.S.C. § 1001 is intended to protect the operation of the federal government, and its agencies, from false statements that would impair its functions.  See, e.g., United States v. D'Amato, 507 F.2d 26, 30 (in holding that 18 U.S.C. § 1001 could not be used to prosecute false statements made in connection with purely civil actions in which the United States was not a party, the Court found that "[t]he legislative history [of 18 U.S.C. § 1001] seems to confirm the fact that statute, originally intended to protect the government from those would defraud it for monetary gain, was broadened to maintain the integrity of the administrative agencies [of the federal government].").

Even if the Court were to find some rights-creating language 18 U.S.C. § 1001 conferring a right upon the Plaintiff, the Plaintiff would still have to demonstrate that the statute intends also to create a private remedy.  Gonzaga University, supra, 536 U.S. at 284.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not

just a private right of action but also a private remedy.  Statutory intent on this latter point is determinative.  The only remedy prescribed in the 18 U.S.C. § 1001 is criminal; the statute does not provide for damages, civil penalties, injunctive relief or declarative relief such as that sought by Plaintiff in this action.

"Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga University, *supra*, 536 U.S. at 286.  18 U.S.C. § 1001 does not confer any individual rights or remedies and there is no indication that Congress intended to create any new rights.  Plaintiff cannot state a private cause of action under 18 U.S.C. § 1001 and his claims must be dismissed.

> **7.    Plaintiff Has Failed to Make Sufficient Allegations to Allow This Honorable Court to Exercise Personal Jurisdiction Over the State Defendants.**

Absent some minimum contacts with the District of Columbia sufficient to meet constitutional due process requirements, this Court cannot exercise personal jurisdiction over the State Defendants and this case should be dismissed.

The due process stage of the personal jurisdiction analysis requires the existence of "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 365 U.S. 310, 316 (1945).  When examining the sufficiency of a non-resident defendant's contact, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  In short, jurisdiction is proper when a

relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." World Wide Volkswagen Corp. V. Woodson, 444 U.S. 286, 297 (1980). In Lesnick, the Fourth Circuit articulated a two-part test to be applied when determining whether the requirements of due process are satisfied:

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and

> (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversy as between states, and (e) the shared interests of the several states in furthering fundamental substantive policies.

Lesnick, *supra*, 35 F.3d at 945-46.

Here, the Complaint provides no reason to believe that the State Defendants have sufficient minimum contacts with the District of Columbia "such that [they] should reasonably anticipate being haled into court there." World Wide Volkswagen Corp., *supra,* 444 U.S. at 297. Plaintiff, a resident of Georgia himself, concedes that "it appears that all crimes committed against the Plaintiff has happen [sic] in the State of Georgia." (Plaintiff's Complaint at Page 6). Plaintiff makes no allegations of any kind of any purposeful activity by the State Defendants directed toward the District of Columbia. Even assuming *arguendo* Plaintiff's Complaint could state a claim against the State Defendants upon which relief may be granted, any such suit would be more appropriately brought in Georgia, the only forum with any interest in the parties or events underlying Plaintiff's Complaint. Accordingly, any claims against the State Defendants must be dismissed for lack of personal jurisdiction.

8.    **At a Minimum, This Action Should be Transferred to the United States District Court for the Northern District of Georgia, Atlanta Division,**

a.    **This Action Should be Transferred Pursuant to 28 U.S.C. § 1404(a).**

At a minimum, the State of Georgia prays this Court enter an Order transferring this

action to the United States District Court for the Northern District of Georgia, Atlanta Division.

On a motion to transfer under § 1404(a), the court must first determine whether the action could have been brought in the transferee court sought by the moving party, i.e., whether venue there is proper. <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 613, 84 S. Ct. 805, 11 L.Ed.2d 945 (1964); <u>Trout Unlimited v. U.S. Dept. of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996); <u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3, 5 (D.D.C. 1996).  In a suit based on federal question, such as this one, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2)….

…[O]nce the court satisfies itself that the action could have been brought in the transferee forum, then it proceeds to determine whether the case should be transferred based on the convenience of the parties and witnesses and the interests of justice.

<u>Payne v. Giant of Maryland, L.L.C.</u>, 2006 U.S. Dist. LEXIS 44004, *7 (D.D.C.).

As all parties to this case are residents or entities of the State of Georgia, it is not a

diversity action. Moreover, the Complaint appears to assert federal question jurisdiction such that

"jurisdiction is not founded solely on diversity of citizenship." 28 U.S.C. § 1391(b).

28 U.S.C. § 1391(b) provides that

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought (1) in a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In short, Plaintiff's action could have been brought in the United States District Court for the

Northern District of Georgia.  The question the Court must consider now is, should this case

have been brought in that Court?  In making that determination, the court weights several private

considerations, including:

> (1) the plaintiff's choice of forum, unless the balance of the convenience is strongly in favor of the defendants;
> (2) the defendants' choice of forum;
> (3) whether the claim arose elsewhere;
> (4) the convenience of the parties;
> (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and
> (6) the ease of access to sources of proof.

Bereson v. Nat'l Financial Srvcs, LLC, 913 F. Supp. 2d 1, 2-3 (D.D.C. 2004) (quoting

McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33, 37 (D.D.C. 2003)).

In this case, all parties, including the Plaintiff are residents and citizens of Georgia.

Plaintiff concedes all events underlying his claims for relief took place in the State of Georgia.

All witnesses and evidence are in Georgia.

For no reason that is readily apparent, Plaintiff selected the United State District Court

for the District of Columbia, where no parties reside and where no events took place, to initiate

this lawsuit.  While ordinarily the Plaintiff's choice of forum is given "substantial deference" by

the Court, McClamrock, *supra*, 267 F. Supp. 2d at 36, that consideration is "diminished….

where, as here, that forum has no meaningful ties to the controversy and no particular interest in

the parties or subject matter." Islamic Republic of Iran v. The Boeing Co., 477 F. Supp. 2d 142,

144 (D.D.C. 1979) (citations omitted).

The District of Columbia has no particular interest in this matter, a dispute wholly

between citizens and residents of the State of Georgia in which all events arose in Georgia, and

Plaintiff does not allege in any way that it does.  None of the parties in this action are citizens of

or reside in the District of Columbia and no events giving rise to Plaintiff's claims for relief

occurred in the District of Columbia.  All the parties are citizens and residents of, and all

underlying events took place in, Georgia; specifically, the Northern District of Georgia, which encompasses Atlanta, Fulton County and DeKalb County, Georgia.   Plaintiff's choice of forum in this case should be given diminished, if any, consideration.

For the reasons stated above, venue is improper in this Court and Defendant respectfully moves this Court for an order, pursuant to 28 U.S.C. § 1404, transferring this case to the United States District Court for the Northern District of Georgia at Atlanta.

### b.     This Action Should Be Dismissed or Transferred Based on the Doctrine of <u>Forum Non Conveniens</u>.

This action should be dismissed or transferred on the basis that a more convenient forum exists, even if venue and personal jurisdiction are found to exist in this Court.

In <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947), the U.S. Supreme Court identified relevant private and public factors the courts should consider when evaluating a motion to transfer for <u>forum non conveniens</u>:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with

the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).

Each of these factors weighs in favor of the Northern District of Georgia, including, but not limited to: all parties reside in Georgia; all evidence and witnesses are in Georgia; and if the State of Georgia has truly "committed crimes" against the Plaintiff, as he alleges in his Complaint, such claims would be a matter of local interest to the community. While the Plaintiff's choice of forum "should rarely be disturbed," in this instance, Plaintiff's choice should have little, if any, influence. Plaintiff is a resident of Georgia himself, and neither the Plaintiff nor the allegations of his Complaint have any readily ascertainable connection with the District of Columbia. "A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." Gulf Oil Corp., supra, 330 U.S. at 507. All factors, including the Plaintiff's convenience, direct that this Court should dismiss or transfer this action on the grounds of forum non conveniens.

## IV. CONCLUSION

WHEREFORE, having established that Plaintiff fails to state a claim upon which relief may be granted, or, alternatively, that venue is improper in the United States District Court for the District of Columbia, Defendant State of Georgia respectfully prays this Court:

a)      enter an Order dismissing all claims raised by Plaintiff, or, alternatively, an Order transferring this action to the United States District Court for the Northern District of Georgia, Atlanta Division;

b)      tax all costs, including attorneys fees, against Plaintiff;

c)      require nothing further of this Defendant; and,

d)          grant such other relief as this Court deems appropriate.

Respectfully submitted this 8th day of February, 2007.

THURBERT E. BAKER          033887
Attorney General

KATHLEEN M. PACIOUS          558555
Deputy Attorney General

/s/ Devon Orland_____
DEVON ORLAND          554301
Senior Assistant Attorney General


/s/ Holly Michele Loy_____
HOLLY MICHELE LOY
Georgia Bar No. 036299
Assistant Attorney General

HOLLY MICHELE LOY
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone:  (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: hloy@law.ga.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8th, 2007, I electronically filed a

**DEFENDANTS' STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

**OF PRE-ANSWER MOTION TO DISMISS** with the Clerk of Court using the

CM/ECF system which will automatically send email notification of such filing to all

attorneys of record.

I further certify that I have on this same date mailed by United States Postal

Service the document to the following non-CM/ECF participants:

> Clemmons' Estate
> c/o Samuel Clemmons
> 2137 Soft Pine Lane
> Acworth, Georgia 30132

This 8th day of February, 2007.

> /s/ Holly Michele Loy
> HOLLY MICHELE LOY
> Georgia Bar No. 036299
> Assistant Attorney General

HOLLY MICHELE LOY
State of Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 463-8850
Facsimile: (404) 651-5304
E-mail: hloy@law.ga.gov